IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA N. CROOK,                                   No. 6:14-cv-01258-HZ

                        Plaintiff,                    OPINION & ORDER

        v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.

Kathryn Tassinari
Robert A. Baron
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street, Suite 200
Eugene, OR 97401

        Attorney for Plaintiff

Janice E. Herbert
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Lisa Goldoftas
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Christina Crook brings this action for judicial review of the Commissioner's

final decision denying her application for Supplemental Security Income (SSI) under Title XVI

of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social

Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1382(c) (3)). For the reasons that follow, the Commissioner's decision is reversed and remanded

for further proceedings.

## PROCEDURAL BACKGROUND

       Plaintiff applied for SSI and DIB on February 14, 2011, alleging disability as of June 1,

2008[1]. Tr. 220-234.[2] Her application was denied initially and on reconsideration. Tr. 147-55,

161-69. On December 10, 2012, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ). Tr. 37. On December 17, 2012, the ALJ found Plaintiff not

disabled. Tr. 16-36. The Appeals Council denied review. Tr. 1-4. Accordingly, the ALJ's

decision became the final decision of the agency from which Plaintiff seeks judicial review.

## FACTUAL BACKGROUND

       Plaintiff alleges disability based on anxiety, post-traumatic stress, attention deficit

disorder, attention deficit hyperactivity disorder, learning disability, cellulitis in hands, and

---

[1] Plaintiff initially alleged disability as of October 1, 1999. Tr. 243-258. However, she amended her
alleged onset date at the administrative hearing. Tr. 40.
[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record,
filed herein as Docket No. 7.

bipolar disorder. Tr. 45, 289. Plaintiff testified that her anxiety and inability to get along with others makes it difficult for her to leave her house. Tr. 45. Plaintiff was thirty-two at the time of the administrative hearing. Tr. 220. She has an 11th grade education and limited work experience. Tr. 43-44.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2008, the alleged onset date. Tr. 20. Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairments of borderline intellectual functioning, anxiety disorder, depressive disorder, and post-traumatic stress disorder, but that the impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. Tr. 20-22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: a low stress job with the following GED (general education development) levels: reasoning 2, math 1, and language 1. Tr. 24. The ALJ determined that Plaintiff had no past relevant work. Tr. 28. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy, such as industrial sweeper/cleaner, hand packager, and farm worker. Tr. 28-29. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 29.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to credit the opinion of examining psychologist Dr. Roman, (2) failing to properly consider the opinion of examining psychologist Dr. Dobles, (3) failing to credit the opinion of treating nurse practitioner Richard Browning, (4) failing to give clear and convincing reasons for rejecting Plaintiff's testimony, (5) failing to

credit the lay evidence, and (6) failing to prove that Plaintiff retains the ability to perform "other work" in the national economy.

I.      **Examining Psychologist Dr. Roman**

Plaintiff contends that the ALJ erred in failing to credit the opinion of examining psychologist Dr. Roman. The Court agrees.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a

physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. <u>Tommasetti</u>, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. <u>Smolen</u>, 80 F.3d at 1286.

Examining psychologist Dr. Pamela Roman evaluated Plaintiff on September 16, 2010. Tr. 430. She made the following diagnostic impressions: post-traumatic stress disorder, chronic, severe; sexual abuse as a child; physical abuse as an adult; self-report of bipolar disorder; borderline intellectual functioning; restless leg; chronic infection/cellulitis in left hand; previous knee injury from a tractor accident ten years ago; and head injury. Tr. 436.

Dr. Roman administered the Wechsler Adult Intelligence Scale-Fourth Edition test (WAIS-IV). Tr. 436. Plaintiff's IQ score was 75, which meant that her overall intellectual functioning was better than only 5% of same-age peers. Tr. 434. Given Plaintiff's score, Dr. Roman opined that understanding and remembering difficult instructions "would be problematic for her." Tr. 436.

On the Digit Span subtest of the WAIS-IV, which tests the ability to mentally manipulate information and auditory memory, Plaintiff performed better than 4% of her same-age peers, which placed her in the "borderline" range. Tr. 436. Dr. Roman opined that, "given [Plaintiff's] emotional state, maintaining attention and concentration throughout the normal work week and work day would be quite difficult for her." Tr. 436.

In terms of activities of daily living, Dr. Roman noted that Plaintiff gets her children ready for school and prepares meals for them. Tr. 437. Plaintiff showers every day and has no difficulty bathing or dressing. <u>Id.</u> Plaintiff knows how to drive, although her husband does most

of the driving. Id. Plaintiff uses the computer two to three hours a day and can use the phone independently. Id. She can do chores around the house but her knees hurt and her hands go numb. Id. Walking and standing cause Plaintiff knee pain. Id.

The ALJ gave "substantial weight" to Dr. Roman's finding that Plaintiff would be unable to understand and remember difficult instructions because of her borderline intellectual functioning. Tr. 27. The ALJ found that this finding was consistent with the opinion of consultative examiner Dr. Dobles and the objective intelligence testing. Id. However, the ALJ gave "little weight" to Dr. Roman's opinion that, given Plaintiff's emotional state, Plaintiff would struggle to maintain concentration and attention throughout the workday. Id. The ALJ found that this opinion was contradicted by "the evidence cite[d] above, and the assessment of Dr. Dobles." Id.

The ALJ did not specify which "evidence cite[d] above" contradicted Dr. Roman's opinion that it would be "quite difficult" for Plaintiff to maintain attention and concentration throughout a normal work week and work day. As to Dr. Dobles' opinion, contrary to the ALJ's assertion, it does not contradict Dr. Roman's opinion. Dr. Dobles stated that Plaintiff's "ability to sustain attention, concentration, and exert mental control ranged from severely impaired to mildly impaired as measured by the Digit Span subtest and Arithmetic subtest of the WAIS-IV." Tr. 467. In the Mental Residual Function Capacity Report, Dr. Dobles found Plaintiff to be "moderately limited" in her ability to maintain attention and concentration for extended periods. Tr. 440. "[M]oderately limited" was defined as "[a] limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis." Tr. 439. The Court fails to see how Dr. Dobles' opinion contradicts Dr. Roman's opinion.

The only other evidence described by the ALJ that mentions attention and concentration is the opinions of two State agency psychological consultants, Dr. Anderson and Dr. Kennemer. Both Dr. Anderson and Dr. Kennemer are non-treating, non-examining medical consultants. Accordingly, their opinions are entitled to less weight than the opinion of Dr. Roman. See Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) ("Less weight is given to the opinion of a non-examining source than to an examining source."). Therefore, even if there is a conflict between the State consultants and Dr. Roman, the consultants' opinions cannot by themselves constitute substantial evidence that justifies the rejection of Dr. Roman's opinion. Id. see also Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.") (emphasis in original).

The ALJ fails to provide any other reasons for rejecting a portion of Dr. Roman's opinion. Accordingly, the ALJ's rejection of Dr. Roman's opinion regarding Plaintiff's attention and concentration is not supported by substantial evidence. The Court finds that the ALJ erred.

## II.    Examining Psychologist Dr. Dobles

Plaintiff contends that the ALJ erred in his consideration of the opinion of examining psychologist Dr. Teresa Dobles. The Court agrees.

Examining psychologist Dr. Dobles conducted a comprehensive psychological and neurological evaluation of Plaintiff through examination and observation on two occasions—November 15, 2010 and January 6, 2011. Tr. 462-73. Dr. Dobles also completed a Mental Residual Function Capacity Report on November 24, 2010. Tr. 439-40.

Dr. Dobles reported that Plaintiff worked as an assistant manager and manager at fast-food establishments for approximately seven years after high school. Tr. 463. Plaintiff reported

that she was able to hold these jobs only because other employees helped her, especially with math skills. Id. Plaintiff then worked at her father's tree nursery. Id. At the time of Dr. Dobles' examination, Plaintiff had not worked for five years. Id.

Dr. Dobles noted that Plaintiff reported an early history of psychiatric symptoms, beginning when she was eight years old. Tr. 464. At the time of the examination, Plaintiff was depressed most days and experienced weight loss, disrupted sleep, psychomotor agitation, fatigue, low energy, feelings of worthlessness, impaired concentration, indecisiveness, irritability, distractibility, and impulsivity. Id. Plaintiff described symptoms associated with anxiety disorders, social phobia, panic attacks, and post-traumatic stress disorder. Tr. 464-65.

Dr. Dobles described Plaintiff's daily activities, as reported by Plaintiff. Tr. 465. Plaintiff prepared her children for school every day. Id. At one session, Plaintiff reported that she spent time during the day cleaning. Id. At the second session, Plaintiff reported that, due to increased anxiety and depressive symptoms, she spent most of the day in bed. Id. Plaintiff's husband generally did the grocery shopping, although sometimes Plaintiff accompanied him. Id. Plaintiff cooked meals and her husband did the laundry. Id.

Dr. Dobles completed a Mental Residual Function Capacity Report. Tr. 439. The report defined "moderately limited" as "a limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e. 8 hours a day, 5 days a week, or an equivalent work schedule." Id. Dr. Dobles found Plaintiff "moderately limited" in the following categories of mental functioning:

- the ability to understand and remember detailed instructions
- the ability to carry out detailed instructions
- the ability to maintain attention and concentration for extended periods
- the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest of periods.

Tr. 439-40.

Dr. Dobles concluded that Plaintiff's overall level of intellectual functioning fell into the borderline range. Tr. 469. Dr. Dobles wrote that Plaintiff's "current cognitive presentation appeared to be consistent with her reports of past IQ testing finding her to be 'borderline retarded' and with her poor academic performance in school." Tr. 469. As measured by the WAIS-IV, Plaintiff had a Full Scale Index of 72, which placed her in the borderline range. Tr. 466.

Dr. Dobles opined that Plaintiff's borderline intellectual functioning would likely interfere with her ability to perform certain types of work. Tr. 470. However, Dr. Dobles also stated that Plaintiff "would likely excel in any work situation in which she was able to utilize her good organization skills and where she had support for her areas of difficulty such as math." Id. Dr. Dobles considered Plaintiff's "good social presentation and people skills" to be an asset. Id. Dr. Dobles wrote that Plaintiff needed to develop a psychological support system before looking for work. Id. Dr. Dobles wrote the following:

> Given the level of Ms. Crook's psychiatric symptoms currently, it will be important for her to develop a psychological support system with a prescriber, a psychotherapist, and Mind-Body skills before looking for work. She is encouraged to establish her support system and utilize it for a period of at least six months. If she and her treaters note a reduction in psychiatric symptoms, Ms. Crook should then be ready to take part in the Jobs Program and begin to look for work. If she does not see a reduction in psychiatric symptoms, Ms. Crook may be a candidate for a referral for SSI disability benefits.

> When Ms. Crook is able to return to work, she may benefit from placement in Vocational Rehabilitation. Given Ms. Crook's significant variability in cognitive functioning and job skills, she would benefit from a mentor and placement in a work situation with a mentor or supportive boss. College level academic work would likely be difficult for Ms. Crook, however she may do well in a job training program.

Id. (emphasis added).

The ALJ gave substantial weight to Dr. Dobles' opinion, as stated in the Mental Residual Function Capacity Report, because Dr. Dobles met with Plaintiff on two occasions and her conclusions were consistent with the results of the standardized intelligence tests. Tr. 26.

The ALJ characterized Dr. Dobles' opinion as finding that Plaintiff was "capable of regular employment." Id. However, Plaintiff contends that the ALJ mischaracterized Dr. Doble's opinion. According to Plaintiff, the ALJ failed to acknowledge that Dr. Dobles opined that Plaintiff needed six months of treatment to determine whether her psychiatric symptoms could improve to the point where Plaintiff could look for work. Furthermore, Dr. Dobles conditioned her opinion of Plaintiff's ability to work on a placement where Plaintiff would receive mentorship due to her "significant variability in cognitive functioning and job skills." Tr. 470.

The Court agrees with Plaintiff. The ALJ selected portions of Dr. Dobles' opinion without considering, or even acknowledging, the entirety of the opinion. As a result, the ALJ's summary of Dr. Dobles' opinion is incomplete. Contrary to Defendant's argument, Dr. Dobles did not merely suggest that Plaintiff develop a psychological support system; rather, she conditioned Plaintiff's ability to work on the establishment of such a system and a demonstrated reduction in psychiatric symptoms. See Tr. 470. The ALJ mischaracterized Dr. Dobles' opinion and then afforded this mischaracterization substantial weight throughout the ALJ's opinion. Accordingly, the ALJ erred.

### III.    "Other Source" Opinion of Treating Nurse Practitioner Richard Browning

Plaintiff contends that the ALJ failed to give legally sufficient reasons for failing to credit the opinion of treating nurse practitioner Richard Browning.

The ALJ noted that, as a psychiatric mental health nurse practitioner, Mr. Browning was "not a medically acceptable source." Tr. 26. "Acceptable medical sources" are defined in the

regulations as sources who "can provide evidence to establish an impairment," including licensed physicians and licensed or certified psychologists. 20 C.F.R. § 1513(a). Nurse practitioners are not listed as acceptable medical sources, but are instead listed in the regulations as "other sources." 20 C.F.R. § 1513(d)(1). See also Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) ("Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not nurse practitioners."); see also Ybarra v. Commissioner of Social Sec., No. 03:10-CV-949-BR, 2011 WL 4501946, at *7 (D. Or. Sept. 28, 2011) ("Although psychiatric mental health nurse practitioners . . . are considered medical sources, they are not 'acceptable medical source[s]' pursuant to 20 C.F.R. § 404.1502.").

Factors the ALJ should consider when determining the weight to give an opinion from "other" sources such as nurse practitioners include: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise. SSR 06–03p, at *4; see also Tupper v. Astrue, No. 3:10-CV-3039-BR, 2011 WL 2710021, at *4 (D. Or. July 12, 2011).

Information from "other sources" cannot establish the existence of a medically determinable impairment. SSR 06-03P at *2. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. Id. To reject evidence from other sources, an ALJ must provide germane reasons. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ gave "little weight" to Mr. Browning's opinion. Mr. Browning treated Plaintiff from January 2011 through May 5, 2011. Tr. 502-06. While the ALJ does not expressly address the length of treatment, he appears to discount Mr. Browning's opinion, in part, because he only treated Plaintiff for four months. Tr. 27.

In addition, the ALJ found Mr. Browning's functional assessment inconsistent with the treatment notes from Options Counseling Services and the assessment of Dr. Dobles. Tr. 27. However, the ALJ does not explain how the assessment is inconsistent with the treatment notes or Dr. Dobles' assessment. The ALJ provides no examples of inconsistencies, nor does he point to any specific part of the record to demonstrate an inconsistency.

The ALJ states that Mr. Browning's observation of Plaintiff's "continued acute hyper-vigilance and hyper startled response" does not "provide significant explanation or support for the overall assessment," and that there is no evidence that the claimant is unable to leave her house as a result of panic attacks. Tr. 27. However, Plaintiff reported panic attacks on several occasions, see Tr. 349, 354, 465, 507, and Options Counseling Services treatment notes reflect Plaintiff's inability to get out of the house on some days, Tr. 490. Even if the ALJ correctly rejected Mr. Browning's description of Plaintiff's hyper-vigilance and startled response, that rejection does not form a basis for rejecting Mr. Browning's opinion in its entirety.

The Court finds that the ALJ fails to provide germane reasons to reject Mr. Browning's opinion, except for the length of treatment. While four months is not a long time, the Court does not see how the length of treatment alone can form the basis for rejecting the whole opinion. Accordingly the ALJ erred.

**IV.    Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to give clear and convincing reasons for finding Plaintiff not credible. The ALJ found Plaintiff not credible because her statements regarding her symptoms were not supported by her treatment history and treatment records.

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan, 169 F.3d at 599.

A.  Treatment History

The ALJ found that significant gaps in Plaintiff's treatment history suggested that her symptoms were not as limiting as she claimed. Tr. 25. Plaintiff sought treatment on June 30, 2008 (the alleged onset date) and July 28, 2008, but then did not seek treatment again until November 2010. Tr. 25. Plaintiff had another significant gap in treatment from May 5, 2011 until July 2012. Id. Plaintiff justifies these gaps by explaining that she was homeless for nine months during this period and, even when she has had an ongoing relationship with a therapist, she missed sessions due to stress and inability to leave her house. Tr. 495-96.

An "adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96–7p at 7–8. Certainly, being homeless for nine months could explain gaps in Plaintiff's treatment.

As to the other gaps in treatment, a limited course of treatment can sometimes justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment such as where there was a three to four month gap in treatment properly considered in discrediting claimant's back pain testimony). However, the Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted); Garrison v. Colvin, 759 F.3d 995, 1018 n.24 (9th Cir. 2014). Accordingly, the Court does not affirm this finding.

B.  Benefit from the Use of Medication

The ALJ discounted Plaintiff's credibility in reporting her symptoms because Plaintiff reported a significant benefit from the use of medication, which suggested that her symptoms could be controlled. Tr. 25. Plaintiff admits that she did experience improvement while on medication. Pl.'s Br. 17. However, she also argues that Abilify, which she took for three years, made her feel "floaty" and she had a hard time getting things done. Tr. 464. Plaintiff also argues that later records show that, despite some improvement on medication, she continued to have significant limitations. Tr. 506-07.

Plaintiff essentially argues for a different interpretation of the evidence. While the ALJ's conclusion about the benefit to Plaintiff from the use of medication is certainly not the only reasonable one, it is still a reasonable interpretation and is supported by substantial evidence. Thus, it is not this Court's role to second-guess it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The Court affirms this finding.

C.  Social Interactions

The ALJ found little evidence in the treatment records to support Plaintiff's allegation that she is unable to work due to poor social skills or difficulties with social interaction. Plaintiff argues that, while the record indicates adequate social skills, "[t]his discrepancy appears to be explained by the fact that Plaintiff is a naturally social person, and may even be socially adept, but her symptoms interfere with social functioning in that she has daily intrusive thoughts that cause her to feel anxious and angry." Pl.'s Br. 18.

As explained above, even if Plaintiff can put forth an alternative, reasonable explanation for the ALJ's findings, it is not this Court's role to disregard the ALJ's conclusion when it is

supported by substantial evidence. The ALJ adequately supports his finding regarding Plaintiff's

social interactions and, therefore, the Court affirms this finding.

###### D.  Situational Stressors

The ALJ concluded that Plaintiff's "symptoms of anxiety, irritability and other

psychological complaints appear to relate to episodes of particular financial hardship" which

were "temporary circumstances that are unlikely to reoccur." Tr. 25-26. The ALJ provides no

explanation for the basis of his conclusion that the stressors in Plaintiff's life were "unlikely to

reoccur." Accordingly, the Court does not affirm this finding, as it is not supported by substantial

evidence in the record.

###### E.  Credibility Conclusion

In sum, the Court affirms the ALJ's findings regarding Plaintiff's use of medications and

ability to interact socially. The findings based on treatment history and situational stressors are

not affirmed. Although this Court may affirm an ALJ's overall credibility conclusion even when

not all of the ALJ's reasons are upheld, Batson, 359 F.3d at 1197, the Court is unable to

determine in this case whether to affirm the ALJ's credibility finding. In other words, the Court

is unsure whether the ALJ would still have found Plaintiff not credible based only on the two

findings the Court affirms.

Therefore, on remand, the ALJ must determine once again whether Plaintiff is credible.

Depending on the finding, it may be necessary to reformulate Plaintiff's residual functional

capacity and the disability analysis.


///

**V.      Lay Testimony from Plaintiff's Husband**

The ALJ gave little weight to the lay witness testimony of Plaintiff's husband, Eric Crook. The ALJ found that Mr. Crook's testimony was contradicted by the Plaintiff's prior statements and other evidence in the record.

Lay testimony regarding a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence the ALJ must take into account. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Indeed, a claimant's lay witness, "though not a vocational or medical expert," is "not disqualified from rendering an opinion as to how [the claimant's] condition affects [his or her] ability to perform basic work activities." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing 20 C.F.R. § 404.1513(d)(4)). The ALJ may reject lay testimony if he provides "arguably germane reasons" supported by substantial evidence, even if those reasons are not clearly linked to the ALJ's determination. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). Inconsistency with the medical evidence constitutes a germane reason sufficient to discredit lay testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). The Court will uphold the ALJ's determination of a lay witness's lack of credibility due to inconsistency with the medical record if there is substantial evidence supporting the ALJ's decision. See id.

Mr. Crook testified that he had been married to Plaintiff for seven years and that they had two children, ages seven and nine. Mr. Crook testified that he got the children ready for school in the morning, made sure Plaintiff took her medication, and paid the bills. Tr. 52-53. Mr. Crook also testified that he handled all of the errands, cooking, dishes, grocery shopping, taking out the trash, and making the bed. Tr. 53. According to Mr. Crook, Plaintiff avoided the kitchen and other small rooms in the house and, three to four days a week, Plaintiff slept most of the day

because of her depression. Tr. 54. Mr. Crook testified that Plaintiff only left the house about once

a week. Tr. 52.

The ALJ noted that Mr. Crook's testimony conflicted with Plaintiff's reports of daily

activities because Plaintiff indicated that she cooks for her family, is able to do household

chores, and is able to drive. Tr. 27. For example, Plaintiff reported that she prepared meals and

that cooking was her hobby. Tr. 27, 432. Plaintiff also indicated that she did some chores such as

cleaning, laundry, and dusting, even though sometimes she needed help or encouragement

completing these tasks. Tr. 299, 432.

The conflict between Mr. Crook's testimony and Plaintiff's reports of daily activities is a

germane reason to discredit Mr. Crook's testimony. The Court finds that the ALJ's decision to

afford little weight to Mr. Crook's testimony is supported by substantial evidence in the record.

**VI.    Step 5 analysis**

Plaintiff contends that the ALJ erred at Step 5 of the analysis, because the hypothetical

posed to the Vocational Expert (VE) did not encompass all of Plaintiff's limitations supported by

the record. The ALJ expressly found that "[w]ith regard to concentration, persistence, or pace . . .

[Plaintiff] has a moderate degree of impairment." Tr. 23. However, the ALJ's RFC makes no

mention of concentration, persistence, or pace, nor did the ALJ mention these limitations in the

hypothetical posed to the VE.

The Ninth Circuit Court of Appeals recently addressed a similar situation in Lubin v.

Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013):

> Although the ALJ found that Lubin suffered moderate difficulties in maintaining
> concentration, persistence, or pace, the ALJ erred by not including this limitation in the
> residual functional capacity determination or in the hypothetical question to the
> vocational expert.

Limiting Lubin "to one to three step tasks due to pain and prescription drug/marijuana use" did not capture the limitation in concentration, persistence, or pace found by the ALJ. The work described by the vocational expert may still require the speed and concentration Lubin lacks. See Brink v. Comm'r Soc. Sec. Admin., 343 Fed. App'x. 211, 212 (9th Cir. 2009) (unpublished). The hypothetical question should have included Lubin's moderate limitations in concentration, persistence, or pace.

Because the ALJ's hypothetical question to the vocational expert did not reflect all of Lubin's limitations, "the expert's testimony has no evidentiary value to support a finding that [Lubin] can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

The Ninth Circuit remanded the case to the district court for further proceedings.

While Lubin is not binding precedent, there is no doubt that it has persuasive value.[3]

Furthermore, even if Defendant is correct that the RFC included an implied limitation to simple, repetitive, and routine tasks, such a limitation does not capture the ALJ's limitation as to concentration, persistence, or pace. See Lubin, 507 Fed. App'x 709, 712; see also Brink, 343 Fed. App'x at 212 ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."); Melton v. Astrue, No. 09-CV-1000-BR, 2010 WL 3853195, at *8 (quoted and agreed with holding in Brink).

Although the ALJ's limitation as to concentration, persistence, or pace, was noted at Steps 2 and 3, he did not provide any explanation for why he did not incorporate these limitations in the RFC. The Court declines to speculate as to the ALJ's reasoning. "Long-standing principles of administrative law require [courts] to review the ALJ's decision based on

---

[3] As Magistrate Judge Acosta noted, the Lubin opinion, because of its similarity to the Ninth Circuit's decision in Brink v. Comm'r Soc. Sec. Admin., 343 Fed. App'x. 211, 212–13 (9th Cir. 2009), is "likely a good indicator of how the court would rule in a published opinion which has the force of law in this district." Saucedo v. Colvin, No. 6:12-CV-02289-AC, 2014 WL 4631225, at *17 (D. Or. Sept. 15, 2014). In addition, other circuits have employed the same reasoning. See Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004); Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011).

the reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225.

Defendant cites Stubbs–Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008); however, this case is distinguishable. In Stubbs–Danielson, the claimant's physician found she had "slow pace, both in thinking & actions," but concluded she was nonetheless able to "carryout simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading." Id. at 1173. The ALJ then incorporated the limitations into a restriction of "simple tasks." Id. at 1174. On appeal, the claimant argued that the limitations in the RFC did not fully incorporate the claimant's limitations in pace as shown in the medical evidence. The Ninth Circuit found that the ALJ's RFC did adequately considered the physician's findings and incorporated the claimant's restrictions regarding concentration, persistence, or pace. Id. Here, the ALJ did not expressly discount his step three finding that Plaintiff suffered from "moderate" deficits in concentration, persistence, and pace. The ALJ simply ignored that finding when assessing Plaintiff's RFC.

When an ALJ makes a finding in step three of moderate limitations in concentration, persistence, or pace, those limitations must be reflected in the RFC assessment. Lubin, 507 F. App'x at 712; see also Strutz v. Colvin, No. 3:14-CV-00807-SI, 2015 WL 4727459, at *13 (D. Or. Aug. 10, 2015); Narron v. Colvin, No. 6:14-CV-00923-SI, 2015 WL 4663388, at *6 (D. Or. Aug. 5, 2015); Saucedo v. Colvin, No. 6:12-CV-02289-AC, 2014 WL 4631225, at *17-18 (D. Or. Sept. 15, 2014). Because the ALJ found "moderate difficulties" with concentration, persistence, or pace but failed to address that finding in his RFC analysis, the ALJ erred. Consequently, the ALJ's hypotheticals did not adequately encompass all of Plaintiff's limitations and, therefore, were not based on substantial evidence. As such, the ALJ's RFC, the hypothetical

questions to the VE based upon the faulty RFC, and the ALJ's findings based upon the VE's responses, are of no evidentiary value. These errors require reversal. In addition, to the extent that the ALJ failed to include limitations found in the opinions of Dr. Roman, Dr. Dobles, and Dr. Browning, this was error for the reasons explained above.

## VII.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)).

The Ninth Circuit Court of Appeals has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;
> (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100-01 (9th Cir. 2014). Even if those requirements are met, the Court retains flexibility in determining the appropriate remedy. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014). The Court "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id.

Here, the ALJ failed to provide legally sufficient reasons to reject Dr. Roman and Mr. Browning's opinions. He also erred in his consideration of Dr. Dobles' opinion and Plaintiff's testimony. However, further administrative proceedings would be useful. For example, Dr. Dobles' opinion is inconclusive and leaves open the question of whether Plaintiff is able to work. See Tr. 470. Plaintiff and her husband both testified that Plaintiff's condition had worsened since Dr. Dobles conducted her examination. Therefore, a follow-up examination may be necessary.[4]

Furthermore, the record as a whole creates serious doubt as to whether Plaintiff is, in fact, disabled. As the ALJ noted, at least some significant part of Plaintiff's symptoms of anxiety and panic appear to be situational. Tr. 26. The ALJ correctly noted several examples of Plaintiff's daily activities and functional abilities that suggest she may not be as limited as she claims. In sum, further administrative proceedings are necessary.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this _____14_____ day of _____Oct_____, 2015

_____Marco Hernández_____
MARCO A. HERNÁNDEZ
United States District Judge

---

[4] Dr. Ryan Cole, Plaintiff's current mental health care provider, noted that he was unable to make a functional assessment of Plaintiff's work-related abilities. Tr. 563.